## APPEAL OF STANLEY INSULATING COMPANY.

Docket No. 2983.   Submitted June 15, 1925.   Decided October 23, 1925.

The taxpayer was affiliated with the Finance and Trading Corporation during the year 1920.

*Andrew T. Smith, Virgil Y. Moore,* and *Camden R. McAtee, Esqs.,* for the taxpayer.

*P. S. Crewe, Esq.,* for the Commissioner.

Before IVINS,[1] MARQUETTE, and MORRIS.

This appeal is from the determination of a deficiency in income and profit taxes for the year 1920, amounting to $33,346.85. The sole question is whether the taxpayer was affiliated in 1920 with the Finance and Trading Corporation. All other questions raised by the pleadings were withdrawn at the hearing.

From the testimony and exhibits introduced at the hearing, the Board makes the following

### FINDINGS OF FACT.

The taxpayer is a Maine corporation, having its principal office in Great Barrington, Mass., where its manufacturing plant is located.

The Finance and Trading Corporation is a Virginia corporation, with its principal office in New York, N. Y. It was incorporated in March, 1916, to engage, *inter alia,* in the work of investigating and reporting upon industrial concerns and in operating, refinancing, reorganizing and liquidating such concerns. It succeeded to the partnership business of Potter, Duer and Griswold, which in turn was the successor to a business of the same general nature theretofore established by Grayson M.-P. Murphy. The business established by Murphy consisted in making examinations of industrial enterprises for credit lines and for the use of banking houses in New York and elsewhere in connection with proposed financing or refinancing and in the issuance of securities.

During the latter part of 1915 Murphy was elected senior vice president of the Guaranty Trust Co., which necessitated the severance of his connection with the partnership of which he was a member and the relinquishment of his name by the firm. The organization name was then changed to Potter, Duer and Griswold.

With the desire of continuing the organization for the benefit of those who had participated for so many years, Murphy in 1916 caused the organization of the Finance and Trading Corporation, and became a substantial stockholder in the newly organized com-

---

[1] This decision was prepared by Mr. Ivins during his term of office.

pany, as well as chairman of its board. Duer became its president, a director, and member of the executive committee.

In the course of his business experience Murphy had obtained considerable acquaintance with bankers, manufacturers, and men of affairs, both in New York and elsewhere, and, in connection with the conduct of certain Red Cross work during the war, gained a close acquaintance with Harvey D. Gibson, then president of the Liberty National Bank, so that immediately after the war Gibson became indirectly a substantial stockholder in and a director of the Finance and Trading Corporation, as well as a member of its executive committee.

During the year 1920 Murphy owned 7,935 shares of voting stock of the Finance and Trading Corporation, and Gibson owned, in equal shares with one Edward S. Moore, all of the 3,000 shares of the voting stock of the Paxpard Corporation, which in turn owned 5,996 shares of the voting stock of the Finance and Trading Corporation. Duer owned 3,965 shares and Glazebrook, Jr., 2,868 shares. The total stock was 30,000 shares.

On December 30, 1918, the Finance and Trading Corporation, acting within its purposes, acquired the entire capital stock ($500,000 par value common) of the taxpayer, and so owned said stock until December 11, 1919, when a financial reorganization of the taxpayer was effected.

Murphy and Gibson, under date of October 1, 1919, entered into a syndicate agreement for the purpose of obtaining funds from subscribers thereto and to use the funds in cases where the Finance and Trading Corporation had either the control of or constant supervision over the industrial companies for the development of which the funds were to be used. Murphy and Gibson, as syndicate managers, obtained subscriptions from some 14 individuals who were not stockholders in the Finance and Trading Corporation. The taxpayer was then reorganized with a capital stock of $750,000. The $500,000 par value of common stock in the taxpayer, held by the Finance and Trading Corporation, was exchanged for $400,000 par value of new common stock, and $100,000 par value of second preferred stock. One hundred twenty-five thousand dollars of first preferred stock was issued to the Finance and Trading Corporation for cash. The preferred stock carried no voting rights.

The Finance and Trading Corporation then transferred to the syndicate managers, for $125,000 in cash, one-third of the new common stock of the taxpayer and $125,000 par value of the taxpayer's first preferred stock. The syndicate managers agreed to purchase the remaining unissued $125,000 of the taxpayer's first preferred stock if called upon to do so.

During the year 1920, the common voting stock of the taxpayer was owned as follows:

Finance and Trading Corporation, $266,200 par value; Harvey D. Gibson and Grayson M.-P. Murphy, as syndicate managers, $133,300 par value; various individuals as directors, $500 par value; total $400,000.

Upon the acquisition of the taxpayer's stock by the Finance and Trading Corporation on December 30, 1918, the Finance and Trading Corporation, as the owner of taxpayer's entire outstanding capital stock, elected the board of directors of the taxpayer from among the officers and employees of the Finance and Trading Corporation. At the same time the board of directors so chosen elected or appointed the officers of the taxpayer—namely, the president, the vice president and general manager, the secretary and treasurer, and the assistant secretary—from among the officers and employees of the Finance and Trading Corporation.

Of the taxpayer's five directors who served during the year 1920 E. R. Duer was president and a director of the Finance and Trading Corporation, O. A. Glazebrook, Jr., the chairman of the board, was a vice president and a director of the Finance and Trading Corporation, O. S. Lyford was a vice president and a director of the Finance and Trading Corporation, and W. S. Hood was the secretary of the Finance and Trading Corporation. The remaining director, S. S. Yates, was a former employee of the Finance and Trading Corporation. During the same year, O. S. Lyford served as president of the taxpayer, W. S. Hood served as secretary and treasurer of the taxpayer, and B. H. H. Noble, comptroller of the Finance and Trading Corporation, served as assistant secretary of the taxpayer. S. S. Yates served as vice president and general manager of the taxpayer.

During the entire time that the Finance and Trading Corporation was interested in the taxpayer as a stockholder, it was the manager and operator of the taxpayer's property. The general books of account of the taxpayer were kept in the offices of the Finance and Trading Corporation and under the direct supervision and direction of officers of the Finance and Trading Corporation. There was no change in the conduct of the affairs of taxpayer after the financial reorganization, or in the character of the personnel of taxpayer's directors and officers, such directors and officers always being selected from among the officials of the Finance and Trading Corporation.

During the calendar year 1920, and at the only stockholders' meeting held in that year, 100 per cent of the stock of the taxpayer was voted by proxies as a unit. The proxies were nominated by the Finance and Trading Corporation. The Finance and Trading Cor-

poration had, during 1920, physical possession of 100 per cent of the certificates of common stock of the taxpayer. The Finance and Trading Corporation was the custodian and had in its vaults the stock standing in the names of Harvey D. Gibson and Grayson M.-P. Murphy, syndicate managers.

All the books and records of the syndicate were kept in the office of the Finance and Trading Corporation by or under the supervision of W. S. Hood, secretary of the Finance and Trading Corporation, who, also, was secretary, treasurer, and director of the taxpayer.

It was the general policy of the Finance and Trading Corporation to sell its interests in industrial enterprises, which it took over, after a period of operation sufficient to put them on an income-producing basis attractive to investors, and that was its policy with respect to the taxpayer. Pursuant to such policy, early in 1921, it commenced negotiations with Landers, Frary & Clark, Inc., for the sale to the latter of all the stock of the taxpayer. These negotiations were conducted by Edward M.-P. Murphy and Otis A. Glazebrook, Jr., vice presidents, and W. S. Hood, secretary, of the Finance and Trading Corporation. The negotiations culminated in a sale effected by a written offer made by Landers, Frary & Clark, Inc., of date February 3, 1921, addressed to the Finance and Trading Corporation, stating that the Finance and Trading Corporation was the owner of 100 per cent of the stock of taxpayer and making an offer therefor, which offer was accepted at the foot of said letter by the Finance and Trading Corporation.

After accepting said offer, the Finance and Trading Corporation called for an assignment of the stock of Gibson and Murphy, syndicate managers, certificate for which was then in the possession of the Finance and Trading Corporation, and, pursuant to such call, Gibson and Murphy, syndicate managers, on February 16, 1921, assigned the certificate for 1,333 shares to the Finance and Trading Corporation. A new certificate was issued and in turn assigned by the Finance and Trading Corporation, along with its own certificate to one Kimball, trustee for Landers, Frary & Clark, Inc., and $500,-000 was paid to the Finance and Trading Corporation for the entire capital stock.

Gibson and Murphy, syndicate managers, were then paid their proportion of the proceeds of the sale by check of the Finance and Trading Corporation, made payable to the said Gibson and Murphy, as syndicate managers. The check was received and endorsed in their names by W. S. Hood, secretary of the Finance and Trading Corporation, and the check was deposited to their credit in bank.

During the entire year 1920, the taxpayer paid to the Finance and Trading Corporation for services of management and supervision,

and for the use of office space, messenger service and other services necessarily incident to operation of a business office, a total amount of approximately $13,000. The amount of payment on this account was fixed by the five directors of the taxpayer, who, with one exception, were officers of the Finance and Trading Corporation, and, with two exceptions, directors also of that company. Payments by the taxpayer to its officers, who were also officers of the Finance and Trading Corporation, were in turn paid by the recipients into the treasury of the Finance and Trading Corporation. The amounts so fixed were wholly inadequate to compensate the Finance and Trading Corporation for services of its officers and space in its office, but were so fixed, in a more or less nominal amount, because of the relationship existing between the two companies, and with the object in view of not burdening the taxpayer with current expense charges, which, but for the intimate relations between the two companies, would have been fixed by the Finance and Trading Corporation, dealing at arms' length with the taxpayer, at from four to five times the amount actually paid. The whole operation of the taxpayer, its direction and management, and the keeping of its books of account show that it was treated as a branch of the business of the Finance and Trading Corporation.

The Commissioner ruled that the taxpayer was not affiliated with the Finance and Trading Corporation in the year 1920, and determined a deficiency in income and profits taxes amounting to $33,346.85. From that determination the taxpayer duly appealed to this Board.

### DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be settled on 10 days' notice, in accordance with Rule 50.

### OPINION.

IVINS: The single question in this appeal arises under the Revenue Act of 1918, section 240, which provides:

(b) For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all the stock of the other or others, or (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests.

In our opinion the facts in the situation before us constitute affiliation within the meaning of section 240.

The Finance and Trading Corporation owned 100 per cent of the voting stock of the taxpayer during 1919. It divested itself of one-third of that ownership for the sole purpose of effecting the financial

reorganization of the taxpayer. It adopted, as its means of accomplishment, a plan by which its capital would be maintained free for other uses; it obtained the necessary funds without incurring any obligation on its part; it procured the investment by outside parties without granting to them any voting rights or any means of control over the activities of the taxpayer. The outsiders relied entirely upon the personal reputation for honesty and responsibility of the syndicate managers. The syndicate agreement vested the managers with the fullest and broadest power and authority. It was a case of trust and confidence in their integrity and judgment. It is unnecessary for us to consider the legal or equitable rights of the syndicate members appertaining to them under the agreement.

The fact is that the entire stock of the taxpayer was voted pursuant to the interests of the Finance and Trading Corporation by virtue of proxies, after, as well as before, the financial rearrangement, with results as effectually constituting and evidencing complete control of all of the stock of the taxpayer in 1920 as in 1919. When the facts disclose such full control as is apparent in this appeal, mere mathematical percentages are of little importance. *Appeal of Hagerstown Shoe & Legging Co.*, 1 B. T. A. 666; *Appeal of Huntington & Clearfield Telephone Co.*, 1 B. T. A. 731.

The Finance and Trading Corporation not only voted all of the stock through proxies, but it negotiated a sale of all of the stock and obligated itself to deliver the same. It knew that it could do so because the certificates were in its own vault and custody. It could speak for the syndicate because of their common unity of interest and business relations. Its officers and directors were practically identical—not a controlling fact, but an important element in the situation as a whole. There was no dissenting voice. The interests were common. Both companies had the same office location for executive purposes. Many of these facts are but expressive of the situation which actually existed—the frame in which the control was set; to use another metaphor, the mirror in which the control was reflected.

Every question of affiliation, as we have previously emphasized, is a question of fact, and upon all of the facts in this appeal we are convinced that a consolidated return should be required of this taxpayer and the Finance and Trading Corporation covering the year 1920.

On reference to the Board, JAMES took no part in the consideration of this appeal.